JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

ATSEC INFORMATION SECURITY CORPORATION

**(b)** County of Residence of First Listed Plaintiff TRAVIS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sherrard (Butch) Hayes, Hayes Law PPLC, 809 West Ave., Austin, Texas 78701
(512) 485-4390

**DEFENDANTS**

CNXTD INC.

County of Residence of First Listed Defendant New York County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [x] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq and 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121(a)

Brief description of cause:
Declaratory judgment establishing rights under an agreement affecting intellectual property.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Excess of $75000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______________________ DOCKET NUMBER ______________

DATE                SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| ATSEC INFORMATION SECURITY CORPORATION<br>*Plaintiff*,<br><br>v.<br><br>CNXTD INC.,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:26-cv-02197 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff atsec information security corp. ("atsec"), by and through undersigned counsel, for its Complaint for Declaratory Judgment and trademark cancellation against Defendant Cnxtd Inc. ("Cnxtd"), states as follows:

## PARTIES

1. Plaintiff atsec is a corporation organized under the laws of the State of Delaware, with its principal place of business in Austin, Texas, and is a resident of the State of Texas.

2. Defendant Cnxtd Inc. is, on information and belief, a corporation organized under the laws of the State of New York, with its principal place of business in the State of New York, and is a resident of the State of New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff, a citizen of Texas, and Defendant, a citizen of New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. In addition, this action arises in part under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. This Court has subject matter jurisdiction over at least those claims under 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121(a).

5. This Court has authority to grant the declaratory relief requested pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, because an actual and justiciable controversy exists between the parties regarding their respective rights and obligations under the Agreement described below.

6. Venue is proper in this District, and in the Austin Division, pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and Division, and a substantial part of the events or omissions giving rise to the claims occurred in this District and Division.

## FACTUAL BACKGROUND

7. This Complaint seeks a declaratory judgment from the Court determining and establishing the rights of atsec under an "Event Partnership Agreement" ("Agreement") with Cnxtd that both parties executed on June 3, 2015. It also seeks a declaratory judgment that atsec has not infringed trademarks asserted by Cnxtd and cancellation of Cnxtd's asserted trademark registrations.

8. For a quarter century atsec has been a leader in the information security industry in the U.S. and internationally. This industry involves highly technical, expert-driven crypto research and testing. National and international standards exist to ensure that the software and hardware created and sold around the world is reliable, resistant to hacking, and performs as it should when under attack by bad actors around the globe. Plaintiff, atsec, has been at the forefront of this industry for decades.

9. By 2012 the industry was in need of a way to bring professionals together to share developments, trends, and technological threats and advances. During this timeframe atsec proposed a symposium that would bring professionals together at different intervals to learn from each other, and to network.

10. In 2012 atsec initiated the idea and started planning for the conference for the purpose of bringing these people together. It named the conference the International Cryptographic Module Conference ("ICMC").

11. In 2013 and 2014, atsec hired Cnxtd to assist with the logistics, organization, and promotion of the conference. For those first two conferences, atsec used the domain names "icmc-2013.org" and "icmc-2014.org" and compensated Cnxtd for its services. On November 22, 2013, atsec registered the domain name "icmconference.org" in anticipation of establishing the conference as an annual event. Following the success of the 2013 and 2014 conferences, atsec elected to use the "icmconference.org" domain name for the 2015 conference and all subsequent conferences.

12. In connection with the earliest ICMC event in 2013, atsec had contact with Bill Rutledge of Cnxtd. atsec, with Cnxtd's assistance, succeeded in attracting interest and growing attendance at the 2013 and 2014 ICMC events, for which atsec took on sole financial responsibility.

13. In 2015 atsec discussed with Bill Rutledge, of Cnxtd, the possibility of arranging the next event that atsec envisioned.

14. Rutledge worked with Fiona Pattinson, a former Vice President at atsec, to draft and enter into the Agreement over the roles and rights of the parties relative to the event.

15. The Agreement allowed Cnxtd to take financial and organizational responsibility for the event for 2015 and 2016. It did not transfer any rights of ownership to Cnxtd beyond that.

16. The Agreement states that atsec would provide Cnxtd "access and use" of the "www.icmconference.org" website owned by atsec, "for use in producing this event."

17. The Agreement does not convey ownership of atsec's trademarks and service marks "ICMC" and "INTERNATIONAL CRYPTOGRAPHIC MODULE CONFERENCE" to Cnxtd. atsec has exclusively owned those trademarks and service marks since adopting them in 2013.

18. The Agreement provides that "[a]ll copyrightable works developed in whole or in part by Cnxtd Inc. in connection with this event shall be created as 'project assets' and Cnxtd shall own all rights in and to such works. atsec will be provided with access to Works for any and all uses, in any and all forms or media now known or hereafter to become known."

19. Cnxtd did not create in whole or part the name ICMC.

20. Cnxtd did not create in whole or part the website www.icmconference.org.

21. The Agreement provides that atsec would have the Exclusive Platinum Sponsorship for the event, and the opportunity to chair the conference advisory committee. atsec has chaired the conference advisory committee and been an Exclusive Platinum Sponsor since 2015. Atsec has served as the chair of the conference program committee since the conference's inception in 2013.

22. The Agreement specifically states that atsec will have access to conference content and participant lists "for use as atsec sees fit."

23. The Agreement does not state that atsec is be restricted from creating any other event or entity associated with the industry.

24. The Agreement does not state that the content or participant lists are to be confidential.

25. The Agreement does not limit access to any content or participant list to Cnxtd or to atsec.

26. The Agreement does not include any language imposing confidentiality of any kind on atsec.

27. The Agreement specifically disclaims any agency relationship between atsec and Cnxtd.

28. The Agreement specifically disclaims any fiduciary relationship between atsec and Cnxtd.

29. The Agreement of the parties is that they are to be independent contractors only.

30. The Agreement does not create any special relationship between the parties outside of their independent contractor status.

31. The Agreement provides that "[n]either party has the authority to bind the other party."

32. The Agreement provides that atsec could terminate it entirely within 60 days following the 2016 event.

33. The Agreement also provides that if not terminated it would automatically renew for another year on the same terms.

34. At the time of the Agreement, June 3, 2015, neither Rutledge nor Cnxtd had any experience in producing events for the cryptographic industry.

35. On June 3, 2015, neither Rutledge nor Cnxtd had training or experience in atsec's or the industry's technical work.

36. The event continued for 7 years before Cnxtd applied for registration of atsec's mark "ICMC" in standard character and design (ICMC) forms with the U.S. Patent and Trademark Office ("USPTO"). Cnxtd sought to register both versions of atsec's mark and their logo design in connection with "arranging and conducting business conferences in the field of commercial cryptography" in International Class 41.

37. Neither Rutledge nor Cnxtd informed atsec that it had done so.

38. Neither Rutledge nor Cnxtd informed atsec that it claimed ownership of or intended to register the ICMC mark.

39. atsec has retained and never ceded control of the International Cryptographic Module Conference, the ICMC trademarks and related common law rights, and the goodwill associated therewith. This is reflected in the Agreement, which was terminable at will by atsec at all times.

40. All use of the ICMC mark by Cnxtd in connection with the International Cryptographic Module Conference has been pursuant to atsec's permission and redounds to atsec's benefit. For example, atsec has retained control over selection of keynote speakers and programming. As a consequence, attendees at the conference as well as the relevant consuming public have come to associate the conference and the ICMC mark with atsec.

41. Because use of the ICMC mark by Cnxtd has at all relevant times redounded to atsec's benefit, there was no independent bona fide use in commerce of the ICMC marks by Cnxtd prior to the filing of its use-based application to register ICMC in standard characters.

42. Nonetheless, because Cnxtd did not inform the USPTO about atsec's rights in the ICMC marks, Cnxtd's application to register ICMC in standard characters matured into Registration No. 6609213 on January 4, 2022, and Cnxtd's application to register matured into Registration No. 6798370 on July 19, 2022.

43. Cnxtd is not, and has never been, the owner of ICMC or . Thus, Cnxtd is not the rightful owner of Registration No. 6609213 or Registration No. 6798370.

44. Because atsec has always owned the ICMC marks, and any use of the ICMC marks by Cnxtd has at all relevant times redounded to atsec's benefit, there could have been no independent bona fide intent to use in commerce the ICMC design mark by Cnxtd. Therefore, Respondent did not have a bona fide intent to use that mark in connection with the identified services on the filing date of the application that matured into Registration No. 6798370. That registration should therefore be canceled pursuant to Trademark Act § 1(b), 15 U.S.C. § 1051(b).

45. Because atsec has always owned the ICMC mark, Cnxtd is not the mark's owner, and Registration No. 6609213 should be cancelled on that basis.

46. By 2024, Cnxtd had been arranging the event for 9 years. As the founder of this event, atsec requested that Cnxtd move the conference for a single year to Austin, Texas, where atsec is headquartered, where ICMC was conceived, and where the ICMC PC and attendees supported to have a future ICMC. Austin is where atsec named, financed, and defined the ICMC concept. atsec has maintained its chair and leadership position over the conference each year since its inception in 2013 so that it could help assure that it stayed true to its original purpose and intent: to strengthen its professional community.

47. In 2026, 46.45% of ICMC attendees who responded to a post-conference survey expressed interest in hosting the 2028 conference in Austin.

48. In a separate site-selection survey, 78.95% (15 of 19) of the participating ICMC Program Committee members voted in favor of holding the 2028 ICMC in Austin, TX.

49. The survey results were shared with Cnxtd.

50. Cnxtd refused to cooperate in moving the event to Austin in 2028.

51. atsec worked professionally with Cnxtd to make this single change in scheduling.

52. On information and belief Cnxtd could not secure as favorable a set of financial incentives from vendors in Austin, TX.

53. Cnxtd at first simply ignored the request.

54. Then Cnxtd provided excuses for avoiding hosting the event in Austin in 2028.

55. One excuse was that airline flights would not accommodate participants adequately.

56. Another excuse was that no hotel or conference center could accommodate the group of ICMC participants in Austin.

57. On information and belief, these excuses were not the real reasons Cnxtd wanted to keep the event in Washington D.C. or cities other than Austin. On information and belief, the motivation was instead a concern about a risk to revenue for Cnxtd.

58. Cnxtd takes the position that atsec is not permitted to use its knowledge of ICMC attendees or speakers to support any other event for this industry, specifically the one that is planned for the fall of 2026, "FIPs 'n' Chips."

59. No attendee or sponsor of ICMC has ever been required to execute a confidentiality or non-disclosure agreement as a condition to attending the conference.

60. No attendee or sponsor of ICMC has ever been required to execute an agreement to refrain from hosting, attending, or sponsoring another event for the same industry.

61 Various industries hold multiple trade events or symposiums each year.

62. Cnxtd does not hold an exclusive right to host events in the information security industry.

63. Cnxtd arranges multiple unrelated industry events on a year-to-year basis.

64. On information and belief, no attendees or sponsors of the other events held by Cnxtd are required to agree to refrain from holding other events in their industries.

65. On information and belief, no attendees or sponsors of the other events held by Cnxtd are required to maintain in confidence the identities or names of other attendees.

66. The ICMC event has occurred only one time per year – in the spring in the recent years, but the risks associated with cryptographic security have exploded around the globe. This changing landscape justified additional sharing of information within the professional community.

67. In 2025 atsec saw this need. It hosted the "FIPS 'n' Chips" bootcamp in March 2025, in Austin, TX. It was a success. One year later the U.S. government issued Executive Order 14412, which encouraged the industry to collaborate among government, industry, and academia to prepare for the next generation of cryptographic challenges.

68. The Crypto-V Alliance exists to further the research and development of ways to meet the increased challenges in crypto security. Of the 7 members of its Board, atsec occupies one position. Starting in the fall of 2026, atsec intends to participate in another event in Austin for the industry entitled "FIPS 'n' Chips," building from the success of the event in 2025. This event was borne from atsec's effort to address increasing cryptographic security risks across the globe. The 2026 event is just such a collaboration with the Crypto-V Alliance, a non-profit, and other industry leaders. The FIPS 'n' Chips event will not present a scheduling conflict with the ICMC event.

69. The FIPS 'n' Chips event is intended to provide the industry with another event option for 2026 and broaden its scope to include academia, fostering collaboration between industry and universities while nurturing the next generation of cryptographers and cybersecurity professionals.

70. Anyone who attends FIPS 'n' Chips may attend ICMC.

71. There is no restriction imposed by atsec on any FIPS 'n' Chips attendees or sponsors keeping them from being involved in any manner in ICMC.

72. The FIPS 'n' Chips event is intended to grow the industry, create additional networking opportunities, and provide additional knowledge sharing.

73. On July 30, 2026, Cnxtd's attorney sent a cease-and-desist letter directly to atsec's attorneys. Cnxtd apparently believes that atsec is prohibited from assisting with the planning for the 2026 FIPS 'n' Chips event.

74. The letter alleged that atsec breached the Agreement, willfully infringed atsec's own ICMC trademarks, and engaged in "tortious interference with Cnxtd's prospective business relationships" by "recruiting ICMC speakers and sponsors to participate atsec's competing conference." But atsec does not control the Crypto-V Alliance, and even if it did would not be prohibited from hosting it – even without the Crypto-V Alliance.

75. The letter made a series of baseless demands on atsec, asserted Cnxtd's alleged right to seek "injunctive relief to halt atsec's competing conference" and "prevent further unauthorized use of the ICMC trademark," and asserted an alleged right to monetary damages.

## CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT (No Right of Cnxtd to Terminate the Agreement)

76. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

78. The language of the Agreement does not entitle Cnxtd to terminate the Agreement.

79. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT II – DECLARATORY JUDGMENT (No Exclusivity on Hosting Industry Events)**

80. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 79 above as if fully set forth herein.

81. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

82. The Agreement grants neither party exclusivity in hosting industry events. The anticipated FIPS 'n' Chips event hosted by-Crypto-V Alliance in Austin in the fall of 2026 does not breach any duty or obligation of atsec under the Agreement or any other legal theory. The hosting of FIPS and Chips does not justify Cnxtd's effort to cancel the Agreement.

83. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT III – DECLARATORY JUDGMENT (No Confidentiality Obligation as to Materials or Attendee Lists)**

84. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 83 above as if fully set forth herein.

85. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

86. The Agreement imposes no obligation on attendees or hosts to maintain materials or attendee lists in confidence.

87. No legal theory justifies imposing a confidentiality obligation on atsec by virtue of the parties' independent contract relationship or contractual obligations.

88. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT IV – DECLARATORY JUDGMENT (No Additional Obligations Under Texas Law)**

89. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 88 above as if fully set forth herein.

90. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

91. Texas law does not impose any additional obligations on atsec that may be outside of the Agreement, even if couched as "good faith and fair dealing," or other types of common law or equitable theories.

92. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT V – DECLARATORY JUDGMENT (No Breach by Conducting a Poll or Hosting Another Event)**

93. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 92 above as if fully set forth herein.

94. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

95. There is no breach of Agreement by conducting a poll or hosting another event in the industry.

96. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT VI – CANCELLATION OF TRADEMARK REGISTRATIONS**

97. Plaintiff incorporates by reference each of the allegations set forth in 1 though 96 above as if fully set forth herein.

98. This Court has the power under 15 U.S.C. § 1119 and 28 U.S.C. § 2201 to determine the right to registration (or lack thereof) of the ICMC marks.

99. Cnxtd does not own the mark in U.S. Registration No. 6609213. That registration should therefore be cancelled.

100. Cnxtd did not have, and could not have had, a bona fide intent to use the mark in U.S. Registration No. 6798370 at the time it filed the underlying trademark application on an intent to use basis under 15 U.S.C. § 1051(b). U.S. Registration No. 6798370 should therefore be cancelled.

101. atsec petitions the Court to issue an order certified to the Director of the USPTO cancelling Cnxtd's Registration Nos. 6609213 and 6798370 pursuant to 15 U.S.C. § 1119 and 28 U.S.C. § 2201.

**COUNT VII – DECLARATORY JUDGMENT (Non-Infringement)**

102. Plaintiff incorporates by reference each of the allegations set forth in 1 though 101 above as if fully set forth herein.

103. Cnxtd has accused atsec of willful trademark infringement. 104. However, Cnxtd does not own the mark ICMC in standard characters, the ICMC design mark (

ICMC

) or any other mark associated with the ICMC conference. atsec is the exclusive owner of the ICMC marks.

105. Cnxtd cannot prove that atsec's use of its own ICMC trademarks is unauthorized or likely to cause confusion.

106. Therefore, atsec has not committed trademark infringement and Cnxtd cannot prove that it has.

107. There is a case or controversy about these issues, as revealed by Cnxtd's cease and desist letter of July 30, 2026.

108. atsec is entitled to a declaratory judgment of non-infringement to clarify and settle its legal rights.

**COUNT VIII – DECLARATORY JUDGMENT (No Interference)**

109. Plaintiff incorporates by reference each of the allegations set forth in 1 though 108 above as if fully set forth herein.

110. Cnxtd accuses atsec of tortiously interfering with Cnxtd business by having any role in the planning for or hosting of FIPS 'n' Chips in the fall of 2026 in Austin.

111. Cnxdt cannot sustain such a claim given the language of the Agreement, the specific disclaiming of any fiduciary relationship, and the complete absence of any obligation on atsec's part to refrain from, consistent with government directive, participating in an event designed to strengthen the professional community.

112. Therefore atsec has not committed any tortious interference and has a legal right to engage in FIPS 'n' Chips in Austin in the fall of 2026.

113. There is a case or controversy about these issues, as revealed by Cnxtd's cease and desist letter of July 30, 2026.

114. atsec is entitled to a declaratory judgment of non-interference to clarity and settle its legal rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff atsec information security, inc. respectfully requests that this Court enter judgment in its favor and against Defendant Cnxtd Inc. as follows:

a. A declaratory judgment that the language of the Agreement does not entitle Cnxtd to terminate the Agreement;
b. A declaratory judgment that the Agreement imposes no exclusivity on hosting industry events;
c. A declaratory judgment that the Agreement imposes no obligation on attendees or hosts to maintain materials or attendee lists in confidence;

d. A declaratory judgment that Texas law does not impose any additional obligations on atsec outside of the Agreement, including under any "good faith and fair dealing" theory;

e. A declaratory judgment that there is no breach of the Agreement by atsec conducting a poll or hosting another event in the industry;\

f. Cancellation of Cnxtd's U.S. Trademark Registration Nos. 6609213 and 6798370.

g. A declaratory judgment of non-infringement.

h. A declaratory judgment of non-interference.

i. An award of Plaintiff's costs incurred in this action; and

j. Such other and further relief as the Court deems just and proper.

Dated: August 10, 2026

Respectfully submitted,

/s/ Sherrard (Butch) Hayes
Sherrard (Butch) Hayes
HAYES LAW PLLC
Attorney for Plaintiff
atsec information security corp.
State Bar No. 00784232
809 West Ave.
Austin, Texas
Telephone: (512) 485-4390
Email: bhayes@hayespllc.com