**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| ATSEC INFORMATION SECURITY CORPORATION, | § | |
| *Plaintiff*, | § | |
| v. | § | Case No. 1:26-cv-02197 |
| CNXTD, INC., | § | |
| *Defendant*. | § | |

# SECOND AMENDED COMPLAINT

Plaintiff atsec information security corporation ("atsec"), by and through undersigned counsel, files its Second Amended Complaint for declaratory judgment, trademark cancellation, and breach of contract against Defendant Cnxtd, Inc. ("Cnxtd"), stating as follows:

## INTRODUCTION AND OVERVIEW

The International Cryptographic Module Conference ("ICMC") was created and conceived by atsec for the purpose of strengthening the industry for all participants in it. The purpose was always to educate and bring a sense of community to the narrow slice of professionals who spend their lives protecting governments and individuals from data breaches by assuring the correct implementation and usage of cryptography in software and hardware that process, transfer, or store data. ICMC was not created to exploit or profit from this community at the expense of the core purposes for which it was created. Instead, it was atsec's intent to allow the cryptographic community's subject matter experts from government and private industry to drive, guide, and cultivate learning and the advancement of cryptographic assurance within the industry.

When atsec created ICMC in 2013, it also created its website and branding. It ran the event

for two years and hired Bill Rutledge, Cnxtd's principal, to assist with the logistics. Rutledge planned events for different industries' trade shows. He offered to run ICMC in 2015 and 2016. Cnxtd and atsec entered into an Agreement in which Cnxtd would use the name and website with atsec's permission to plan and arrange ICMC on a year-to-year basis each year after the completion of the 2016 ICMC. Nothing about this was designed to transfer ownership to or imbue this event planner with the authority to define who directed the scientific and educational trajectory of the event.

To assure that ICMC remained true to its purpose, atsec required that as a condition to allowing Cnxdt to plan the event, atsec would always act as the chair of the Program Committee. It has held that role since the event's inception in 2013. In that role, atsec has exercised substantive control and oversight of conference quality and technical programming to help ensure that ICMC serves the broader cryptographic module validation community. This role is substantive rather than ceremonial. Cnxtd has no ability to contribute to the curriculum or scientific agenda of ICMC. This was critical to the Agreement allowing Cnxtd to plan and profit from ICMC.

For several years, things ran smoothly. The Program Committee, with atsec as its Chair, assured that ICMC served the interests of the community. Cnxtd arranged the hotel and meals. ICMC grew with the industry. Cnxtd made more and more money, which was fine with atsec as long as it could maintain its role in shaping the technical and scientific focus of the event. This was the cornerstone of atsec allowing Cnxtd to profit from its role.

But things have changed. Cnxtd secretly sought to register the ICMC trademark that was created by atsec. Cnxtd never told atsec that it attempted to pirate the name and mark, because it knew that atsec would not allow it. Once atsec learned of Rutledge's attempt to hijack its intellectual property, the relationship became strained and atsec began to take steps to assure that ICMC would remain true to its purpose.

In 2025, atsec sought to organize a way to celebrate the achievements of ICMC. The goal was to recognize the conference's history, mission, participants, and contributions to the cryptographic module validation ecosystem. This ultimately became a threat to Cnxtd, which wanted complete dominion over ICMC, its agenda, location, and messaging.

In the summer of 2026, Cnxtd learned that another industry event, FIPS 'n' Chips, was to be held in the fall of 2026, more than six months from the ICMC scheduled for 2027. Cnxtd erroneously believed that atsec created and owned the event. So, it had a lawyer send a cease-and-desist letter to atsec claiming that atsec had no right to sponsor another event, and citing absurd legal theories to justify the conclusion. But Cnxtd was wrong about the facts and the law. The letter purported to strip atsec of its role as Chair of the Program Committee in retaliation for simply being part of a group that planned another educational cryptography-based event at the opposite end of the calendar year. This hurts atsec's reputation and harms the cryptographic community.

Cnxtd's exclusion of atsec from key roles at the ICMC 2027 Program Committee and deprivation of its Exclusive Platinum Sponsorship for the event have and will cause significant harm to atsec. Aside from direct financial harm, the message Cnxtd attempts to direct to vendors, labs, and key government officials is that atsec is no longer a leader in this industry. This constitutes a humiliating insult to atsec as the founder of ICMC. For these reasons, and to help preserve the integrity of the ICMC, atsec now stands up for itself, and the cryptographic community, to restore the ICMC to an event designed for the good of the industry rather than just another way for Cnxtd to make more money. Instead of welcoming more educational and networking opportunities for a growing community, Cnxtd has tried to bully and intimidate its way to a monopoly in an industry it does not understand.

Atsec refuses to allow this to happen.

## PARTIES

1. Plaintiff atsec is a corporation organized under the laws of the State of Delaware, with its principal place of business in Austin, Texas, and is a resident of the State of Texas.

2. Defendant Cnxtd, Inc. is, on information and belief, a corporation organized under the laws of the State of New York, with its principal place of business in the State of New York, and is a resident of the State of New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff, a citizen of Texas, and Defendant, a citizen of New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. In addition, this action arises in part under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq*. This Court has subject matter jurisdiction over at least those claims under 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121(a).

5. This Court has authority to grant the declaratory relief requested pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, because an actual and justiciable controversy exists between the parties regarding their respective rights and obligations under the Agreement described below.

6. Venue is proper in this District, and in the Austin Division, pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and Division, and a substantial part of the events or omissions giving rise to the claims occurred in this District and Division.

## FACTUAL BACKGROUND

7. This Complaint seeks a declaratory judgment from the Court determining and establishing the rights of atsec under an "Event Partnership Agreement" ("Agreement") with Cnxtd

that both parties executed on June 3, 2015. It also seeks a declaratory judgment that atsec has not infringed trademarks asserted by Cnxtd, as well as cancellation of Cnxtd's asserted trademark registrations. And it seeks relief for Cnxtd's breaches and/or anticipatory breaches of the Agreement.

8. For a quarter century, atsec has been a leader in the information security industry in the U.S. and internationally. This industry involves highly technical, expert-driven cryptography research and testing. National and international standards exist to ensure that the software and hardware created and sold around the world are reliable, resistant to hacking through cryptographic protection, and performs as it should when under attack by bad actors around the globe. Plaintiff, atsec, has been at the forefront of this industry for decades.

9. By 2012, the industry was in need of a way to bring professionals together to share developments, trends, and technological threats and advances. During this timeframe, atsec proposed a symposium that would bring professionals together at different intervals to learn from each other, and to network.

10. In 2012, atsec initiated the idea and started planning for the conference for the purpose of bringing these people together. It named the conference the International Cryptographic Module Conference ("ICMC").

11. In 2013, atsec hired Cnxtd to assist with the logistics, organization, and promotion of the conference. Atsec used the domain name "icmc-2013.org" and compensated Cnxtd for its services. On November 22, 2013, atsec registered the domain name "icmconference.org" in anticipation of establishing the conference as an annual event. In 2014, atsec hired Cnxtd again to assist with ICMC and used the domain name "icmconference.org." Atsec left all the profit from ICMC 2014 with Cnxtd as seed money to further grow ICMC. Following the success of the 2013 and 2014 conferences, atsec authorized Cnxtd to use the "icmconference.org" domain name for the 2015

conference and all subsequent conferences.

12. In connection with the earliest ICMC event in 2013, atsec had contact with Bill Rutledge of Cnxtd. Atsec, with Cnxtd's assistance, succeeded in attracting interest and growing attendance at the 2013 and 2014 ICMC events, for which atsec took on sole financial responsibility.

13. In 2015, atsec discussed with Rutledge the possibility of arranging the next event that atsec envisioned.

14. Rutledge worked with Fiona Pattinson, a former Vice President at atsec, to draft and enter into the Agreement over the roles and rights of the parties relative to the event.

15. The Agreement allowed Cnxtd to take financial and organizational responsibility for the event for 2015 and 2016. It did not transfer any rights of ownership to Cnxtd beyond that.

16. The Agreement states that atsec would provide Cnxtd "access and use" of the "www.icmconference.org" website owned by atsec "for use in producing this event."

17. The Agreement does not convey ownership of atsec's trademarks and service marks "ICMC" and "INTERNATIONAL CRYPTOGRAPHIC MODULE CONFERENCE" to Cnxtd. Atsec has exclusively owned those trademarks and service marks since adopting them in 2013.

18. The Agreement provides that "[a]ll copyrightable works developed in whole or in part by Cnxtd Inc. in connection with this event shall be created as 'project assets' and Cnxtd shall own all rights in and to such works. Atsec will be provided with access to Works for any and all uses, in any and all forms or media now known or hereafter to become known."

19. Cnxtd did not create, in whole or part, the name ICMC.

20. Cnxtd did not create, in whole or part, the website www.icmconference.org.

21. The Agreement provides that atsec would have the Exclusive Platinum Sponsorship for the event, and the opportunity to chair the conference advisory committee. Atsec has chaired the

conference advisory committee and been an Exclusive Platinum Sponsor since 2015. Atsec has served as the chair of the conference program committee since the conference's inception in 2013.

22. The Agreement specifically states that atsec will have access to conference content and participant lists "for use as atsec sees fit."

23. The Agreement does not state that atsec is restricted from creating any other event or entity associated with the industry.

24. The Agreement does not state that the content or participant lists are to be confidential.

25. The Agreement does not limit access to any content or participant list to Cnxtd or to atsec.

26. The Agreement does not include any language imposing confidentiality of any kind on atsec.

27. The Agreement specifically disclaims any agency relationship between atsec and Cnxtd.

28. The Agreement specifically disclaims any fiduciary relationship between atsec and Cnxtd.

29. The Agreement of the parties is that they are to be independent contractors only.

30. The Agreement does not create any special relationship between the parties outside of their independent contractor status.

31. The Agreement provides that "[n]either party has the authority to bind the other party."

32. The Agreement provides that atsec could terminate it entirely within 60 days following the 2016 event.

33. The Agreement also provides that if not terminated it would automatically renew for

another year on the same terms.

34. When the Agreement was executed on June 3, 2015, neither Rutledge nor Cnxtd had any experience organizing events for the cryptographic industry, other than assisting atsec with ICMC 2013 and ICMC 2014.

35. On June 3, 2015, neither Rutledge nor Cnxtd had training or experience in atsec's or the industry's technical work.

36. The event continued for seven years before Cnxtd applied for registration of atsec's mark "ICMC" in both standard-character and design forms ( ICMC ) with the U.S. Patent and Trademark Office ("USPTO"). Cnxtd sought to register both versions of atsec's mark and their logo design in connection with "arranging and conducting business conferences in the field of commercial cryptography" in International Class 41.

37. Neither Rutledge nor Cnxtd informed atsec that it had done so.

38. Neither Rutledge nor Cnxtd informed atsec that it claimed ownership of, or intended to register, the ICMC mark.

39. Atsec has retained and never ceded control of the International Cryptographic Module Conference, the ICMC trademarks and related common law rights, and the goodwill associated therewith. This is reflected in the Agreement, which was terminable at will by atsec at all times.

40. All use of the ICMC mark by Cnxtd in connection with the International Cryptographic Module Conference has been pursuant to atsec's permission and redounds to atsec's benefit. For example, atsec has retained control over selection of keynote speakers and programming. As a consequence, attendees at the conference as well as the relevant consuming public have come to associate the conference and the ICMC mark with atsec and the cryptographic validation community in which atsec plays a leading role.

41. Because use of the ICMC mark by Cnxtd has at all relevant times redounded to atsec's

benefit, there was no independent bona fide use in commerce of the ICMC marks by Cnxtd prior to the filing of its use-based application to register ICMC in standard characters.

42. Nonetheless, because Cnxtd did not inform the USPTO about atsec's rights in the ICMC marks, Cnxtd's application to register ICMC in standard characters matured into Registration No. 6609213 on January 4, 2022, and Cnxtd's application to register ICMC matured into Registration No. 6798370 on July 19, 2022.

43. Cnxtd is not, and has never been, the owner of ICMC or ICMC. Thus, Cnxtd is not the rightful owner of Registration No. 6609213 or Registration No. 6798370.

44. Because atsec has always owned the ICMC marks, and any use of the ICMC marks by Cnxtd has at all relevant times redounded to atsec's benefit, there could have been no independent bona fide intent to use in commerce the ICMC design mark by Cnxtd. Therefore, Cnxtd did not have a bona fide intent to use that mark in connection with the identified services on the filing date of the application that matured into Registration No. 6798370. That registration should therefore be canceled pursuant to Trademark Act § 1(b), 15 U.S.C. § 1051(b).

45. Because atsec has always owned the ICMC mark, Cnxtd is not the mark's owner, and Registration No. 6609213 should be cancelled on that basis.

46. By 2024, Cnxtd had been arranging the event for 9 years. As the founder of this event, atsec requested that Cnxtd move the conference for a single year to Austin, Texas, where atsec is headquartered, where ICMC was conceived, and which the ICMC Program Committee and attendees supported as a host site for a future ICMC. Austin is where atsec named, financed, and defined the ICMC concept. Atsec has maintained its chair and leadership position over the conference each year since its inception in 2013 so that it could help assure that it stayed true to its original purpose and intent: to strengthen its professional community.

47. In 2026, 46.45% of ICMC attendees who responded to a post-conference survey expressed interest in hosting the 2028 conference in Austin.

48. In a separate site-selection survey, 78.95% (15 of 19) of the participating ICMC Program Committee members voted in favor of holding the 2028 ICMC in Austin, TX.

49. The survey results were shared by Cnxtd with the ICMC Program Committee.

50. Cnxtd refused to cooperate in hosting the event in Austin in 2027, stating that it would reconsider Austin as a potential venue for 2028. Despite favorable votes from both ICMC attendees and Program Committee members, Cnxtd continued to refuse to cooperate in bringing the event to Austin in 2028. Furthermore, Cnxtd excluded atsec from the ICMC Program Committee's subsequent decision-making process regarding the selection of the ICMC 2028 venue.

51. Atsec worked professionally with Cnxtd and accommodated the selection of a location other than Austin for ICMC 2027, while once again requesting that ICMC 2028 be hosted in Austin.

52. On information and belief, Cnxtd could not secure as favorable a set of financial incentives from vendors in Austin.

53. Cnxtd at first simply ignored the request.

54. Then Cnxtd provided excuses for avoiding hosting the event in Austin in 2027.

55. One excuse was that airline flights would not accommodate participants adequately.

56. Another excuse was that no hotel or conference center could accommodate the group of ICMC participants in Austin.

57. On information and belief, these excuses were not the real reasons Cnxtd wanted to keep the event in Washington, D.C., or cities other than Austin. On information and belief, the motivation was instead about the potential loss of revenue for Cnxtd and/or the possibility of

reinforcing the community's recognition of atsec's founding role in ICMC.

58. Cnxtd takes the position that atsec is not permitted to use its knowledge of ICMC attendees or speakers to support any other event for this industry, specifically the one that is planned for the fall of 2026, "FIPs 'n' Chips."

59. No attendee or sponsor of ICMC has ever been required to execute a confidentiality or non-disclosure agreement as a condition of attending the conference.

60. No attendee or sponsor of ICMC has ever been required to execute an agreement to refrain from hosting, attending, or sponsoring another event for the same industry.

61 Various industries hold multiple trade events or symposiums each year.

62. Cnxtd does not hold an exclusive right to host events in the information security industry.

63. Cnxtd arranges multiple unrelated industry events on a year-to-year basis.

64. On information and belief, no attendees or sponsors of the other events held by Cnxtd are required to agree to refrain from holding other events in their industries.

65. On information and belief, no attendees or sponsors of the other events held by Cnxtd are required to maintain in confidence the identities or names of other attendees.

66. ICMC has occurred only one time per year—in the spring in the recent years—but the risks associated with cryptographic security have exploded around the globe. This changing landscape justified additional sharing of information within the professional community.

67. In 2025, atsec saw this need. It hosted the "FIPS 'n' Chips" bootcamp in March 2025 in Austin. It was a success. One year later, the U.S. government issued Executive Order 14412, which encouraged the industry to collaborate among government, industry, and academia to prepare for the next generation of cryptographic challenges.

68. The Crypto-V Alliance exists to further the research and development of ways to meet the increased challenges in cryptographic security. Of the seven members of its Board, atsec occupies one position. Starting in the fall of 2026, atsec intends to participate in another event in Austin for the industry entitled "FIPS 'n' Chips," building from the success of the event in 2025. This event was borne from atsec's effort to address increasing cryptographic security risks across the globe. The 2026 event is just such a collaboration with the Crypto-V Alliance, a non-profit, and other industry leaders. The FIPS 'n' Chips event will not present a scheduling conflict with the ICMC event.

69. The FIPS 'n' Chips event is intended to provide the industry with another event option for 2026 and broaden its scope to include academia, fostering collaboration between industry and universities while nurturing the next generation of cryptographers and cybersecurity professionals.

70. Anyone who attends FIPS 'n' Chips may attend ICMC.

71. There is no restriction imposed on any FIPS 'n' Chips attendees or sponsors keeping them from being involved in any manner in the ICMC.

72. The FIPS 'n' Chips event is intended to grow the industry, create additional networking opportunities, and provide additional knowledge sharing.

73. On July 30, 2026, Cnxtd's attorney sent a cease-and-desist letter directly to atsec's attorneys. *See* Ex. 1. Cnxtd apparently believes that atsec is prohibited from assisting with the planning for the 2026 FIPS 'n' Chips event.

74. The letter alleged that atsec breached the Agreement, willfully infringed atsec's own ICMC trademarks, and engaged in "tortious interference with Cnxtd's prospective business relationships" by "recruiting ICMC speakers and sponsors to participate in atsec's competing

conference." But atsec does not control the Crypto-V Alliance, and even if it did, it would not be prohibited from hosting the event—even without the Crypto-V Alliance.

75. The letter made a series of baseless demands on atsec, asserted Cnxtd's alleged right to seek "injunctive relief to halt atsec's competing conference" and "prevent further unauthorized use of the ICMC trademark," and asserted an alleged right to monetary damages.

76. The letter purports to terminate the Agreement, including atsec's contractual right to be ICMC's exclusive platinum sponsor.

77. The letter expresses Cnxtd's intention to deprive atsec of the benefits of platinum sponsorship for the 2027 ICMC.

78. The letter expresses Cnxtd's position that it will not comply with any of its future obligations under the Agreement.

79. The letter states that atsec will not be permitted "to participate in any future ICMC event in any sponsorship capacity."

80. Further, in its Original Answer, Cnxtd implies that atsec has "breached" the Agreement by supporting a different industry event to be held six months apart from ICMC in a different state.

81. This statement can only be read to mean the Cnxtd believes that the Agreement is no longer effective or that Cnxtd believes that it is excused from its obligations.

82. In Paragraph 112 of its Original Answer, Cnxtd admits that atsec has the legal right to participate in and promote FIPS 'n' Chips, an admission that negates Cnxtd's allegation that atsec breached the 2015 Agreement by exercising that right. Nevertheless, Cnxtd excluded atsec from the ICMC Program Committee while inviting other Program Committee members to participate in preparations for ICMC 2027. By excluding atsec from the ICMC Program Committee and the

planning of ICMC 2027, Cnxtd acted contrary to its obligations under the Agreement and thereby breached it.

**CAUSES OF ACTION**

**COUNT I – DECLARATORY JUDGMENT**
**(No Right of Cnxtd to Terminate the Agreement)**

83. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 82 above as if fully set forth herein.

84. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

85. The language of the Agreement does not entitle Cnxtd to terminate the Agreement. For the reasons identified in Counts II-V, as well as Count XIII, atsec has not committed any material breach of the Agreement, and Cnxtd is without the right to "cancel" it as it asserts in Exhibit 1.

86. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT II – DECLARATORY JUDGMENT**
**(No Exclusivity on Hosting Industry Events)**

87. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 86 above as if fully set forth herein.

88. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

89. The Agreement grants neither party exclusivity in hosting industry events. The anticipated FIPS 'n' Chips event hosted by Crypto-V Alliance in Austin in the fall of 2026 does not breach any duty or obligation of atsec under the Agreement or any other legal theory. The hosting of FIPS 'n' Chips does not justify Cnxtd's effort to cancel the Agreement. Nothing in the Agreement

gives rise to an obligation on the part of atsec to refrain from promoting, attending, or even hosting another industry event.

90. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT III – DECLARATORY JUDGMENT**
**(No Confidentiality Obligation as to Materials or Attendee Lists)**

91. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 90 above as if fully set forth herein.

92. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

93. The Agreement imposes no obligation on attendees or hosts to maintain materials or attendee lists in confidence.

94. No legal theory justifies imposing a confidentiality obligation on atsec by virtue of the parties' independent contract relationship or contractual obligations. The Agreement does not impose any confidentiality obligation on atsec and does not give rise to any implied obligation of confidentiality.

95. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT IV – DECLARATORY JUDGMENT**
**(No Additional Obligations Under the Law)**

96. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 95 above as if fully set forth herein.

97. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

98. The law does not impose any additional obligations on atsec that may be outside of the Agreement, even if couched as "good faith and fair dealing," or other types of common law or equitable theories. The Agreement imposes no heightened duty or implied obligations on atsec's part.

99. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT V – DECLARATORY JUDGMENT**
**(No Breach by Conducting a Poll or Hosting Another Event)**

100. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 99 above as if fully set forth herein.

101. An actual and justiciable controversy exists between atsec and Cnxtd concerning their respective rights and obligations under the Agreement.

102. There is no breach of Agreement by conducting a poll or hosting another event in the industry. The Agreement does not impose any obligation to refrain from such activities.

103. Plaintiff is entitled to a declaratory judgment from this Court resolving this controversy and declaring the rights of the parties as set forth above.

**COUNT VI – CANCELLATION OF TRADEMARK REGISTRATIONS**

104. Plaintiff incorporates by reference each of the allegations set forth in 1 though 103 above as if fully set forth herein.

105. This Court has the power under 15 U.S.C. § 1119 and 28 U.S.C. § 2201 to determine the right to registration (or lack thereof) of the ICMC marks.

106. Cnxtd does not own the mark in U.S. Registration No. 6609213. That registration should therefore be cancelled.

107. Cnxtd did not have, and could not have had, a bona fide intent to use the mark in U.S. Registration No. 6798370 at the time it filed the underlying trademark application on an intent to use

basis under 15 U.S.C. § 1051(b). U.S. Registration No. 6798370 should therefore be cancelled.

108. Atsec petitions the Court to issue an order certified to the Director of the USPTO cancelling Cnxtd's Registration Nos. 6609213 and 6798370 pursuant to 15 U.S.C. § 1119 and 28 U.S.C. § 2201.

**COUNT VII – DECLARATORY JUDGMENT**
**(Non-Infringement)**

109. Plaintiff incorporates by reference each of the allegations set forth in 1 through 108 above as if fully set forth herein.

110. Cnxtd has accused atsec of willful trademark infringement.

111. However, Cnxtd does not own the mark ICMC in standard characters, the ICMC design mark (ICMC) or any other mark associated with the ICMC conference. Atsec is the exclusive owner of the ICMC marks.

112. Cnxtd cannot prove that atsec's use of its own ICMC trademarks is unauthorized or likely to cause confusion.

113. Therefore, atsec has not committed trademark infringement and Cnxtd cannot prove that it has.

114. There is a case or controversy about these issues, as revealed by Cnxtd's cease and desist letter of July 30, 2026.

115. Atsec is entitled to a declaratory judgment of non-infringement to clarify and settle its legal rights.

**COUNT VIII – DECLARATORY JUDGMENT**
**(No Interference)**

116. Plaintiff incorporates by reference each of the allegations set forth in 1 through 115 above as if fully set forth herein.

117. Cnxtd accuses atsec of tortiously interfering with Cnxtd business by having any role in the planning for or hosting of FIPS 'n' Chips in the fall of 2026 in Austin.

118. Cnxtd cannot sustain such a claim given the language of the Agreement, the specific disclaiming of any fiduciary relationship, and the complete absence of any obligation on atsec's part to refrain from, consistent with government directive, participating in an event designed to strengthen the professional community.

119. Therefore, atsec has not committed any tortious interference and has a legal right to engage in FIPS 'n' Chips in Austin in the fall of 2026. Atsec has a justifiable, legal right to participate in and promote FIPS 'n' Chips.

120. There is a case or controversy about these issues, as revealed by Cnxtd's cease and desist letter of July 30, 2026.

121. Atsec is entitled to a declaratory judgment of non-interference to clarity and settle its legal rights.

**COUNT IX – BREACH OF CONTRACT**

122. Plaintiff incorporates by reference each of the allegations set forth in Paragraphs 1 through 121 above as if fully set forth herein.

123. Cnxtd materially breached the Agreement on July 30, 2026, when it notified atsec in writing that it would deprive atsec of its contractual right to be the ICMC's exclusive platinum sponsor, and of the benefits associated with platinum sponsorship.

124. Cnxtd materially breached the Agreement by declaring that it was no longer obligated to perform its obligations under it.

125. Cnxtd materially breached the Agreement by excluding atsec employees Dr. Yi Mao, who has served as the Program Committee Chair, and Dr. Marcos Portnoi from the ICMC Program

Committee, while inviting other Program Committee members to continue their participation.

126. Cnxtd materially breached the Agreement by removing atsec employees Dr. Yi Mao and Dr. Marcos Portnoi from the list of ICMC Program Committee members published on the ICMC website, icmconference.org.

127. Alternatively, Cnxtd has anticipatorily breached the Agreement by expressly stating its intention not to perform its obligations under it.

128. These breaches will cause atsec significant reputational and monetary harm. Atsec is understood to be the founder and longstanding leader of ICMC, and its exclusion from positions of leadership—such as the conference advisory committee and the welcome address—will damage its standing in its professional community. The harm does not stop with atsec's diminished status within the clientele it serves. Independently, atsec's exclusion from these roles sends a false and damaging impression to the government officials and technical experts who ultimately review and approve atsec's cryptographic testing work in connection with its clients' FIPS certifications. This causes atsec to suffer a diminished reputation within this critical subgroup of the industry. There is no reasonable way to quantify the financial harm associated with atsec's exclusion from roles that are critical to maintaining its high professional reputation within this group of federal subject matter specialists.

129. Cnxtd's egregious act of excluding atsec from the ICMC Program Committee has divided the cryptographic validation community and caused significant harm to a professional community that has taken decades to build and unite. This sets a dangerous precedent by allowing an event organizer lacking expertise in cryptographic validation to exert control over a highly specialized professional conference and silence Program Committee members by threatening to exclude those who express differing opinions from the event's planning and decision-making processes. Such actions undermine the independence of the Program Committee and its ability to safeguard the

conference's mission and serve the best interests of the community. The resulting damage to this specialized professional community is substantial and cannot be adequately measured in monetary terms.

130. Atsec seeks injunctive relief prohibiting Cnxtd from depriving atsec of the benefits of exclusive platinum sponsorship and role as Chair of the Program Committee.

131. In the alternative, to the extent atsec is actually deprived of those benefits, atsec seeks actual damages.

132. Atsec seeks to recover its costs and reasonable attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff atsec information security corp. respectfully requests that this Court enter judgment in its favor and against Defendant Cnxtd Inc. as follows:

a. A declaratory judgment that the language of the Agreement does not entitle Cnxtd to terminate the Agreement and that atsec has committed no material breach;

b. A declaratory judgment that the Agreement imposes no exclusivity on hosting industry events;

c. A declaratory judgment that the Agreement imposes no obligation on attendees or hosts to maintain materials or attendee lists in confidence;

d. A declaratory judgment that Texas law does not impose any additional obligations on atsec outside of the Agreement, including under any "good faith and fair dealing" theory;

e. A declaratory judgment that there is no breach of the Agreement by atsec conducting a poll or hosting another event in the industry;

f. Cancellation of Cnxtd's U.S. Trademark Registration Nos. 6609213 and 6798370;

g. A declaratory judgment of non-infringement;

h. A declaratory judgment of non-interference;

i. Injunctive relief prohibiting Cnxtd from depriving atsec of its rights under the Agreement, including the right to be ICMC's exclusive platinum sponsor;

j. Actual damages;

k. An award of Plaintiff's costs and reasonable attorney's fees incurred in this action; and

l. Such other and further relief as the Court deems just and proper.

Dated: October 16, 2026.

Respectfully submitted,

/s/ *Sherrard (Butch) Hayes*
Sherrard (Butch) Hayes
HAYES LAW PLLC
State Bar No. 00784232
809 West Ave. Austin,
Texas 78701
Telephone: (512) 485-4390
Email: bhayes@hayespllc.com

/s/ *Michael B. Adlin*
Michael B. Adlin (admitted *pro hac vice*)
Christopher M. Weimer
State Bar. No. 24061894
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, Texas 78702
Telephone: (737) 443-8821
Facsimile: (512) 322-5201
Email: cweimer@pirkeybarber.com
madlin@pirkeybarber.com

*Attorneys for Plaintiff atsec information security corp.*

*From:* Craig Delsack <cdelsack@nyccounsel.com
<mailto:cdelsack@nyccounsel.com>>
*Sent:* Thursday, July 30, 2026 2:36 PM
*To:* Chris Weimer <cweimer@pirkeybarber.com
<mailto:cweimer@pirkeybarber.com>>; PB Docketing
<tmcentral@pirkeybarber.com <mailto:tmcentral@pirkeybarber.com>>;
atmcullen@pirkeybarber.com <mailto:atmcullen@pirkeybarber.com>
*Cc:* Delsack Craig <cdelsack@nyccounsel.com
<mailto:cdelsack@nyccounsel.com>>
*Subject:* URGENT: Notice of Material Breach and Termination — Event Partnership Agreement dated June 2, 2015; Demand to Cease and Desist

Dear Mr. Weimer:

This firm represents CNXTD, Inc. (“_Cnxtd_”) in connection with the above-referenced matter. We write to: (1) formally notify your client, atsec information security corporation (“_atsec_”), that its recent conduct constitutes multiple material and irreparable breaches of the parties’ Event Partnership Agreement dated June 2, 2015 (the “_Agreement_”), as well as violations of applicable law; (2) provide formal notice that Cnxtd hereby terminates the Agreement for cause, effective immediately; and (3) demand that atsec immediately cease and desist from all conduct described herein.

*A. _Background_*

As you know, the Agreement grants atsec the Exclusive Platinum Sponsorship of the International Cryptographic Module Conference (ICMC) on a complimentary basis — a benefit valued at approximately $25,000 per event year. In exchange, atsec agreed to participate

cooperatively in the production of ICMC. The Agreement is explicit that Cnxtd owns ICMC and bears full financial and operational responsibility for the conference. The Agreement has auto-renewed annually since the 2016 event, as atsec never timely exercised its contractual right of termination.

*B. _atsec's Material Breaches_*

Notwithstanding its obligations under the Agreement, atsec has engaged in the following conduct, each of which independently constitutes a material and incurable breach of the Agreement and/or a tortious wrong, and collectively represents a fundamental repudiation of the cooperative purpose of the Agreement:

*1. Launch of Competing Conference.*

atsec has announced and is actively promoting a competing cryptography conference for fall 2026, accessible at https://crypto-v.org/fnc2026/ <https://crypto-v.org/fnc2026/>. This conduct breaches atsec's /implied duty of good faith and fair dealing/ — which prohibits a party from acting to destroy or undermine the value of the contract to the other side — constitutes /unfair competition/, and amounts to/ tortious interference/ with Cnxtd's business relationships. atsec has access to ICMC's speaker community, sponsor relationships, and attendee lists solely by virtue of its complimentary Platinum Sponsorship. Using that insider access to build, fund, and promote a competing conference is an abuse of the contractual relationship and a fundamental repudiation of the Agreement's cooperative purpose. This breach is not capable of cure.

*2. Unauthorized Campaign and Willful Misuse of the ICMC Trademark.*

At the April 20–23, 2026 ICMC conference in Washington, DC — which atsec attended as Platinum Sponsor — atsec distributed to attendees a professionally produced, full-color promotional flyer headlined: “We invite you to vote for Austin, Texas as the location for the ICMC 2028,” branded prominently with “www.atsec.com <http://www.atsec.com/>.” The flyer directed attendees to scan a QR code linking (https://vimeo.com/1183427619/0c56d80b3b <https://vimeo.com/1183427619/0c56d80b3b>) to a promotional music video uploaded to Vimeo on April 15, 2026 — before the conference began — establishing that this was a deliberate, premeditated corporate campaign. A copy of this flyer is attached as _Exhibit A_.

This conduct is improper on multiple independent grounds. First, it constitutes willful unauthorized use of Cnxtd’s registered ‘ICMC’ trademark. The flyer bears the mark ‘ICMC 2028’ on atsec-branded commercial materials distributed at a public conference. Cnxtd never authorized atsec to use the ICMC mark in this manner. This unauthorized commercial use constitutes trademark infringement under 15 U.S.C. § 1114 and creates a likelihood of confusion as to source and ownership of ICMC events, in violation of 15 U.S.C. § 1125(a). Because the campaign was premeditated — evidenced by the April 15, 2026 Vimeo upload date — the infringement was willful, entitling Cnxtd to enhanced damages and attorneys’ fees under the Lanham Act. Second, it exceeds the scope of the Platinum Sponsorship rights granted under the Agreement, which do not authorize atsec to conduct advocacy campaigns at ICMC or to purport to influence Cnxtd’s

exclusive venue decisions. Third, it creates actionable marketplace confusion: attendees receiving an ICMC-branded flyer from atsec at the ICMC conference may reasonably conclude that atsec has co-ownership or authority over future ICMC events — a false and damaging impression.

*3. Solicitation of ICMC Speakers and Sponsors.*

atsec has been actively soliciting and recruiting ICMC speakers and sponsors to participate in its competing conference, using relationships and access obtained solely through its Platinum Sponsorship. While certain speakers and sponsors are currently continuing to participate in ICMC, atsec's solicitation campaign — conducted using ICMC's own community relationships — creates a concrete and imminent risk of future diversion. This constitutes tortious interference with Cnxtd's prospective business relationships. The wrongful act is the solicitation itself; Cnxtd need not await actual defection before seeking relief.

*C. _Notice of Termination For Cause_*

The foregoing conduct — particularly the launch of a competing conference while holding a complimentary Platinum Sponsorship, and the willful unauthorized use of the ICMC trademark at Cnxtd's own conference — constitutes a material and fundamental breach of the Agreement that goes to the heart of the contractual relationship. These breaches are not capable of cure in any meaningful sense: atsec has launched a competing conference, produced and distributed trademark-infringing materials, and engaged in a premeditated campaign against Cnxtd's interests, all while

accepting the benefits of complimentary Platinum Sponsorship.

Accordingly, Cnxtd hereby provides formal notice that it is terminating the Event Partnership Agreement dated June 2, 2015, for cause, effective immediately (the "_Termination Date_"). As of the Termination Date:

1. All of atsec's rights under the Agreement, including its Exclusive Platinum Sponsorship and all associated benefits, shall immediately and permanently terminate;
2. atsec shall immediately cease all use of the ICMC trademark, name, brand, and any associated marks in any medium or context;
3. atsec shall have no right or claim to participate in any future ICMC event in any sponsorship capacity; and
4. Cnxtd reserves all rights to pursue damages, injunctive relief, and all other remedies arising from atsec's breaches described herein.

*D. _Demands_*

Cnxtd demands that atsec act immediately to:

1. Cease all promotion, marketing, and organization of any conference, event, or program that competes with ICMC, including but not limited to the event currently promoted at crypto-v.org/fnc2026 <https://crypto-v.org/fnc2026/>;
2. Cease all unauthorized use of the ICMC trademark, name, and brand in any medium, and destroy or withdraw all existing materials bearing the ICMC mark that were not expressly authorized in writing by Cnxtd, including the flyer attached as _Exhibit A_ and the associated Vimeo video;
3. Cease soliciting, recruiting, or encouraging any ICMC speaker,

sponsor, or attendee to participate in any competing event, and provide written confirmation that all such solicitation has ceased;

4. Retract and publicly correct any communications suggesting atsec has ownership of, authority over, or co-sponsorship of future ICMC events or venue decisions; and

5. Preserve all documents and communications relating to: (a) the planning, promotion, and financing of atsec's competing conference; (b) the production and distribution of the Austin flyer and associated Vimeo video; and (c) any solicitation of ICMC speakers, sponsors, or attendees, as this matter may proceed to litigation.

Cnxtd reserves all rights and remedies under the Agreement and applicable law, including: the right to seek immediate injunctive relief to halt atsec's competing conference, prevent further unauthorized use of the ICMC trademark, and prevent further solicitation of ICMC speakers and sponsors; damages under the Lanham Act including statutory damages up to $2,000,000 and attorneys' fees for willful infringement; contract damages; and damages for prospective and future harm to ICMC events. This letter is without prejudice to any and all such rights.

Please confirm in writing, within ten (10) business days of the date of this letter, that atsec has fully complied with each of the demands set forth above. If you have any questions, please do not hesitate to contact me. (I also attach a copy of this correspondence for your files).

All the best,

Craig

*Craig Delsack*

*Law Offices of Craig Delsack, LLC*

Corporate ● Technology ● Media ● Entertainment ● Real Estate

● Cannabusiness

New York, NY

*Tel. or Fax: +1 (212) 688-8944*

CDelsack@NYCCounsel.com <mailto:CDelsack@NYCCounsel.com>

www.NYCCounsel.com <http://www.nyccounsel.com/>

www.NYCannaBusiness.com <http://www.nycannabusiness.com/